Dated: 7/5/2017

Marian F. Harrison
US Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | CASE NO. 316-00182 |
| PAUL W. SHERRICK, ) | |
| ) | JUDGE MARIAN F. HARRISON |
| Debtor. ) | |
| ) | Chapter 7 |
| ) | |
| ) | |
| HST CORPORATE INTERIORS, LLC, ) | ADV. NO. 316-90109 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PAUL W. SHERRICK, ) | |
| ) | |
| Defendant. ) | |

_____

## MEMORANDUM OPINION
_____

HST Corporate Interiors, LLC ("HST") filed the above-styled adversary complaint to determine whether its claim against Paul W. Sherrick ("debtor") is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), (a)(6), and (a)(14). For the following reasons, which represent the Court's findings of fact and conclusions of law pursuant to Federal Rule

of Civil Procedure 52(a)(1), as incorporated by Federal Rule of Bankruptcy Procedure 7052, the Court finds that HST's claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## I. FACTS

The debtor was the president and sole owner of Sherrick Construction, a Tennessee corporation and certified Small Business Administration 8(a) ("SBA 8(a)") contractor authorized to obtain federal contracts as a socially or economically disadvantaged business. HST is an Alabama limited liability company in the business of procuring and installing office furniture and equipment in connection with commercial construction projects.

In June 2011, HST was negotiating a contract with the United States for the installation of furniture, equipment, and related items at the Hurlburt Field Child Development Center East in Hurlburt Field, Florida ("Hurlburt Field Project") when it was directed to team with a SBA 8(a) contractor to sign the contract. Because HST had previously tried to partner with Sherrick Construction on a SBA 8(a) contract, Larry Carr ("Mr. Carr") of HST contacted the debtor by telephone to see if Sherrick Construction was interested in teaming up on the Hurlburt Field Project. Mr. Carr testified that during that telephone conversation, HST entered into a verbal contract with the debtor and Sherrick Construction whereby HST would procure and install the items for the Hurlburt Field Project. On July 28, 2011, Brenda Pond ("Ms. Pond"), the contract administrator for HST, emailed a 91-page attachment that provided all the information regarding the Hurlburt Field

Project to the debtor, including a detailed invoice, the proposed amount to be paid to Sherrick Construction ($8960), and the amount of the total contract ($314,500). Later that day, Ms. Pond emailed the debtor to let him know that the contract had been awarded. The government contract was attached, and Ms. Pond asked that the debtor sign the contract and forward it back to her, which the debtor did that same day. As proposed, Sherrick Construction served as the named SBA 8(a) contractor, and HST purchased and installed the equipment, furniture, and related items for the project. In November 2011, the government asked for some changes. Ms. Pond forwarded the changes to the debtor, and he signed the amended agreement on November 29, 2011.[1] Again, the debtor never asked any questions or expressed any reservations about the agreement or his proposed SBA 8(a) fee. There was never a signed, written agreement between HST and Sherrick Construction or the debtor.

On February 8, 2012, Ms. Pond informed the debtor that there were two small punch items to be completed as well as two pieces of product awaiting arrival before the project would be 100% complete. On February 13, 2012, the debtor emailed Ms. Pond that he thought the project should be invoiced with two billings, the first one at 98% and the second at 2%, because the government is slow to pay final bills. The debtor stated that he was concerned about vendors wanting their money sooner rather than later. Ms. Pond responded

---

[1] At this point, Sherrick Construction's SBA 8(a) certification had expired. As the debtor testified, SBA 8(a) status is only good for nine years, and Sherrick Construction's certification expired in September of 2011.

3 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:16-ap-90109    Doc 40    Filed 07/06/17    Entered 07/06/17 14:23:58    Desc Main
Document    Page 3 of 19

on February 28, 2012, that HST had been paying all vendors, so no one was waiting on their money. She further stated "if you are going to invoice now for 98% of the total, once you receive the payment from the government, then those dollars will actually come to us since we have been paying the vendors and you will invoice us for your project management fee of $8960.00. If you want to go ahead and invoice us the $8960.00, we will certainly cut you a check!"

Velzetta Conyers ("Ms. Conyers"), who coordinated federal contract projects for Sherrick Construction, had no knowledge or involvement in the Hurlburt Field Project until Ms. Pond sent her the information for invoicing the government for the project on February 28, 2012. Ms. Conyers invoiced the government on March 20, 2012. Tammy Holzapfel ("Ms. Hozapfel"), Sherrick Construction's bookkeeper, had no knowledge of the Hurlburt Field Project until right before Ms. Conyers billed the government. When Ms. Hozapfel asked what project the invoice covered, Ms. Conyers informed her that the project belonged to the debtor. At that time, either the debtor or Ms. Conyers printed out a copy of the government contract so Ms. Hozapfel could open a file for it. Both Ms. Conyers and Ms. Hozapfel testified that normally they were involved in the contract process but that the debtor handled this project mostly himself.

Sherrick Construction invoiced the government the contract amount of $314,500 in two separate batches on March 20, 2012, and July 19, 2012, which amounts were paid

directly into Sherrick Construction's operating account on April 18, 2012 ($280,190.83) and August 1, 2012 ($34,309.17).

On July 7, 2012, Ms. Pond emailed the debtor and Ms. Conyers, informing them that HST had not received payment from the project and asking if Sherrick Construction had been paid. Ms. Conyers responded on July 9, 2012, asking for an invoice from HST. Ms. Conyers emailed Ms. Pond again on August 8, 2012, asking about the invoice. Ms. Pond responded that the invoice was attached. Ms. Pond again emailed the debtor and Ms. Conyers on January 24, 2013, stating that the accounting department had informed her that Sherrick Construction had never paid the invoice and requesting that they contact her immediately to discuss when to expect full payment.

Sherrick Construction never paid any amounts associated with the Hurlburt Field Project to HST. In fact, by the time Ms. Pond made inquiries regarding payment and provided the invoice, the proof indicates that Sherrick Construction no longer had the funds to pay HST. From the testimony, it appears that the debtor regularly made transfers from Sherrick Construction's bank account to his personal bank account. These transfers were in addition to his salary of $2454.54 every two weeks. On May 31, 2012, the debtor transferred $73,161 from Sherrick Construction's account to his account to pay past due personal income taxes for 2010. From July 2012 to September 2012, the debtor transferred another $24,550 from Sherrick Construction to pay his personal income tax debt. In addition, according to

Ms. Holzapfel, Sherrick Construction paid between $75,000 to $100,000 in the first part of 2012 for payroll taxes because the company did not have the money to pay them as they came due. Sherrick Construction was also subject to an insurance audit which cost the company between $45,000 to $50,000.

HST filed a lawsuit against the debtor and Sherrick Construction in the Chancery Court for the State of Tennessee at Davidson County, Case No. 13-1613-IV. The Chancery Court case was set for trial on November 2, 2015, then again on January 13, 2016. On January 12, 2016, the debtor and Sherrick Construction filed for relief under Chapter 11 and proceeded as debtors-in-possession. The petitions for bankruptcy relief stayed the pending Chancery Court litigation. On March 17, 2016, the debtor and Sherrick Construction moved to convert their cases to proceedings under Chapter 7. On May 3, 2016, this Court granted the motions to convert. Prior to conversion, HST filed adversary complaints to determine the dischargeability of the debt owed by the debtor and Sherrick Construction to HST. The dischargeability action against Sherrick Construction was dismissed by agreed order on September 7, 2016.

## II. DISCUSSION

### A. Piercing the Corporate Veil

In Tennessee, a shareholder is usually not liable personally for the acts of the corporation. ***Rogers v. Louisville Land Co.***, 367 S.W.3d 196, 214 (Tenn. 2012); ***Oceanics***

***Sch., Inc. v. Barbour,*** 112 S.W.3d 135, 140 (Tenn. Ct. App. 2003) (citation omitted) ("A corporation is presumptively treated as a distinct entity, separate from its shareholders, officers, and directors."). Under appropriate circumstances, a court of equity may disregard the separate legal identity of the corporation. In such a case, the shareholders, as owners of the entity, are considered identical to the corporation and may be held individually responsible for corporate liabilities. ***Muroll Gesellschaft M.B.H. v. Tenn. Tape, Inc.,*** 908 S.W.2d 211, 213 (Tenn. Ct. App. 1995). "The party wishing to pierce the corporate veil has the burden of presenting facts demonstrating that it is entitled to this equitable relief." ***Oceanics***, 112 S.W.3d at 140 (citation omitted). Because there is a presumption of corporate regularity, "[t]he principle of piercing the corporate veil is to be applied with great caution and not precipitately," and each case "must rest upon its special facts." ***Muroll Gesellschaft,*** 908 S.W.2d at 213 (citation omitted); ***Pamperin v. Streamline Mfg., Inc.,*** 276 S.W.3d 428, 437 (Tenn. Ct. App. 2008) ("Piercing the corporate veil is an equitable doctrine applied in extreme circumstances to prevent the use of a corporate entity to defraud or perform illegal acts.").

The evidence presented must show that "the separate corporate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is 'necessary to accomplish justice.'" ***CAO Holdings, Inc. v. Trost***, 333 S.W.3d 73, 88 (Tenn. 2010) (quoting ***Oceanics*** 112 S.W.3d at 140); *see also **Boles v. Nat'l Development Co., Inc.,*** 175 S.W.3d 226, 245-46 (Tenn. Ct. App. 2005) (quoting ***Fed. Deposit Ins. Co. v. Allen***, 584 F. Supp. 386, 397 (E.D.

Tenn. 1984) (The fundamental question is whether the corporation is a sham or dummy, and whether the corporation's separate existence "'has been used to work a fraud or injustice in contravention of public policy.'"); *Pamperin,* 276 S.W.3d at 437 ("When piercing the corporate veil, a court may disregard the corporate entity in order to impose liability against a related entity, such as a parent corporation or a controlling shareholder, where the two entities are in fact identical or indistinguishable and where necessary to accomplish justice."). The "[c]onditions under which the corporate entity will be disregarded vary according to the circumstances present in the case, and the matter is particularly within the province of the [t]rial [c]ourt." *Muroll Gesellschaft*, 908 S.W.2d at 213 (citation omitted) (in an appropriate case and in furtherance of the ends of justice, a corporation and individuals owning all its stock will be treated as identical).

There are a number of factors to consider when deciding whether to remove the corporate protection. *Rogers*, 367 S.W.3d at 215. These include:

> (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

8 - U.S. Bankruptcy Court, M.D. Tenn.

Case 3:16-ap-90109    Doc 40    Filed 07/06/17    Entered 07/06/17 14:23:58    Desc Main
Document      Page 8 of 19

*Trost*, 333 S.W.3d at 88 n.13 (quoting ***FDIC v. Allen***, 584 F. Supp. 386, 397 (E.D. Tenn. 1984)). "No single factor among those listed is conclusive, nor is it required that all of these factors support piercing the corporate veil; typically, courts will rely on a combination of the factors in deciding the issue." ***Rogers***, 367 S.W.3d at 215 (citation omitted). "Even though corporate formalities have been observed, one may still challenge the corporate entity by showing that he has been the victim of some basically unfair device by which the corporate form of business organization has been used to achieve an inequitable result." ***Schlater v. Haynie***, 833 S.W.2d 919, 925 (Tenn. App. 1991). "However . . . the equities must substantially favor the party requesting relief, and the presumption of the corporation's separate identity should be set aside only with great caution." ***Rogers***, 367 S.W.3d at 215 (internal citations omitted). *See also **Schlater***, 833 S.W.2d at 925 (The corporate veil will be pierced "where the corporation is created or used for an improper purpose, or where the corporate form has been abused, as when used to an end subversive of the corporation's policy.").

In finding that HST is entitled to pierce the corporate veil to hold the debtor personally liable for Sherrick Construction's debt, the debtor's sole ownership of Sherrick Construction and his diversion of corporate funds to pay his personal income taxes are key. At the time the debtor transferred funds to pay his personal tax debt, Sherrick Construction had already received payments on the Hurlburt Field Project. Looking at Sherrick Construction's bank records, at the end of April 2012, Sherrick Construction's balance was

less than the amount received from the initial payment on the Hurlburt Field Project. The bank balance continued to go down each month until by the end of October 2012, Sherrick Construction only had a balance of $14,316.36. The debtor testified that the reason he was unable to pay HST's debt is because he was losing his SBA 8(a) contractor status and because of a sequester on all such jobs. Although the debtor could not have foreseen the sequester, it did not occur until December 2012, approximately seven months after the majority of the payment on the Hurlburt Field Project had been received by Sherrick Construction and over six months after HST had made inquiries regarding payment. In addition, the debtor clearly knew that Sherrick Construction's SBA 8(a) contractor status was coming to an end. As he testified, SBA 8(a) status is only good for nine years, and Sherrick Construction's certification was set to expire in September of 2011. In fact, by the time payments on the Hurlburt Field Project were received, Sherrick Construction no longer had its SBA 8(a) status.

The facts of this case justify piercing the corporate veil. Moreover, as pointed out by the Sixth Circuit Court of Appeals, a creditor does not have to prove that "the debtor directly and personally received every dollar lost by the creditor." **Brady v. McAllister (In re Brady),** 101 F.3d 1165, 1172 (6th Cir. 1996). Instead, a debtor may be liable even when he has only indirectly obtained some tangible or intangible financial benefit. **See Ash v. Hahn (In re Hahn),** No. 11–3146, 2012 WL 392867, at *4 (Bankr. N.D. Ohio Feb. 6, 2012) (citing **Brady**).

10 - U.S. Bankruptcy Court, M.D. Tenn.

Having determined that the corporate veil can be pierced in this particular case, the Court now turns to the issues of dischargeability.

### B. Dischargeability

Generally, exceptions to discharge are to be construed strictly against the creditor. *Gleason v. Thaw*, 236 U.S. 558, 562 (1915). The burden of proof falls upon the party objecting to discharge to prove by a preponderance of the evidence that a particular debt is nondischargeable. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). The primary purpose of bankruptcy is to grant a "fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367 (2007) (citation and internal quotation marks omitted). Because the bankruptcy discharge is central to a "fresh start," discharge exceptions "are to be strictly construed against the creditor and liberally in favor of the debtor." *Risk v. Hunter (In re Hunter),* 535 B.R. 203, 212 (Bankr. N.D. Ohio 2015) (citations omitted).

### C. 11 U.S.C. § 523(a)(2)(A)

HST asserts first that the debt is nondischargeable under 11 U.S.C. § 523(a)(2)(A). Under 11 U.S.C. § 523(a)(2)(A), a creditor has the burden of proving by a preponderance of the evidence the following elements:

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

11 - U.S. Bankruptcy Court, M.D. Tenn.

***Rembert v. AT & T Universal Card Servs., Inc. (In re Rembert),*** 141 F.3d 277, 280-81 (6th Cir. 1998) (citing ***Longo v. McLaren (In re McLaren)***, 3 F.3d 958, 961 (6th Cir.1993)). When there is evidence of "actual fraud," a false representation is not a necessary element when considering a dischargeability claim under 11 U.S.C. § 523(a)(2)(A). ***Husky Internat'l Elecs., Inc. v. Ritz***, 578 U.S. \_\_\_, \_\_\_, 136 S. Ct. 1581, 1590 (2016).

In the present case, there is no proof that the debtor made any material misrepresentation to HST or that any fraudulent scheme took place at the time of the oral agreement. Nor is there any proof that the debtor intended to deceive HST. At the time the debtor agreed to and signed the documents required for the project, there is no indication that the debtor did not intend to pay HST. The debtor testified that the business was doing well

at that time, and there was no proof to the contrary.[2] Accordingly, the Court finds that HST's claim of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(A) is not well taken.

### C. 11 U.S.C. § 523(a)(4)

Next, HST asserts that its claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(4). Under 11 U.S.C. § 523(a)(4), a discharge can be denied for a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Section 523(a)(4) creates two distinct exceptions to discharge: (1) fraud or defalcation while acting in a fiduciary capacity, and (2) embezzlement or larceny whether or not acting in a fiduciary capacity. ***Gribble v. Carlton (In re Carlton)***, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982) (citations omitted).

---

[2]HST also argues that under Tennessee law, a presumption of intent to defraud has been established. The Court rejects this argument. The Tennessee statutory scheme for contractors in T.C.A. § 66-11-140 provides:

> Use of the proceeds as enumerated in §§ 66-11-137 – 66-11-139 for any purpose other than either payment pursuant to written agreement between the parties or in accordance with the allocation of costs and profits under generally accepted accounting principles for construction projects shall be prima facie evidence of intent to defraud. Use of a single business bank account for multiple projects shall not be evidence of intent to defraud.

Under T.C.A. § 66-11-140, a prima facie case of intent to defraud is created, thus shifting the burden of proof to the contractor to show lack of intent. However, nondischargeability of a debt under 11 U.S.C. § 523(a)(2)(A) is governed by federal law. ***Wilson v. Mettetal (In re Mettetal)***, 41 B.R. 80, 86 (Bankr. E.D. Tenn. 1984) (citation omitted). Thus, the prima facie case set out in T.C.A. § 66-11-140 does not suffice for nondischargeability under 11 U.S.C. § 523(a)(2)(A).

13 - U.S. Bankruptcy Court, M.D. Tenn.

### 1. Fiduciary Duty

In order to find a debt nondischargeable under § 523(a)(4) for fraud or defalcation, the Sixth Circuit requires, by a preponderance of the evidence: "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005) (citation omitted). The question of who is a fiduciary is a matter of federal law, although state law gives guidance as to when a trust relationship exists. *Carlisle Cashway v. Johnson (In re Johnson)*, 691 F.2d 249, 251 (6th Cir. 1982) (citation omitted). The Sixth Circuit Court of Appeals has held that federal law places an additional requirement on the "fiduciary" component of § 523(a)(4); it exists only in specific instances "involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *R.E. Am., Inc. v. Garver (In re Garver)*, 116 F.3d 176, 180 (6th Cir. 1997) (citation omitted). There was no proof of an express or technical trust relationship. Accordingly, no fiduciary relationship existed between the debtor and/or Sherrick Construction with HST.

### 2. Embezzlement

Embezzlement, on the other hand, does not require the existence of a fiduciary relationship. Under 11 U.S.C. § 523(a)(4), embezzlement is defined as "'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1172–73 (6th Cir. 1996) (quoting *In re Carlton*, 26 B.R. at 205)). In order to show

embezzlement, a creditor must prove three elements by a preponderance of the evidence: (1) the property of the creditor was entrusted to the debtor; (2) the debtor appropriated the property for a use other than that for which it was entrusted; and (3) the circumstances indicate fraud. *Id.* at 1173 (citation omitted). The fraud element may be satisfied by a showing of deceit. ***See Nat'l City Bank v. Imbody (In re Imbody)***, 104 B.R. 830, 841 (Bankr. N.D. Ohio 1989) (citations omitted) ("[m]ost courts that have considered the issue have held that acting with deceit will satisfy the fraudulent intent requirement" of embezzlement). The fraud element of 11 U.S.C. § 523(a)(4) is "'fraud in fact, involving moral turpitude or *intentional* wrong'" and requires "'proof of the debtor's fraudulent intent in taking the [creditor's] property.'" ***Cash Am. Fin. Servs., Inc. v. Fox (In re Fox)***, 370 B.R. 104, 116 (B.A.P. 6th Cir. 2007) (citations omitted). A "debtor's fraudulent intent may often be shown by circumstantial evidence." *Id*. (citation omitted).

In the present case, the proof supports a finding of embezzlement. There can be no dispute that the funds were lawfully entrusted to the debtor and Sherrick Construction and that the funds were used for other purposes. Moreover, the circumstantial evidence supports a showing of deceit. While no agreement was signed between Sherrick Construction and HST, the debtor implicitly agreed that Sherrick Construction would serve as the SBA 8(a) contractor on the project for a fee. Being the SBA 8(a) contractor meant signing the contract and billing the government, while HST would perform and coordinate all the work on the project. When payments were received for the Hurlburt Field Project, the debtor knew that

Sherrick Construction was not entitled to keep the entire amount. The debtor, who was proactive in how the government should be billed, made no effort to notify HST when payments were received. The circumstantial evidence suggests that the reason is because at that time, the debtor needed those funds to pay his overdue personal income taxes, Sherrick Construction's payroll taxes, and significant penalties from an insurance audit. As discussed earlier, the majority of the funds, $280,190.83, were received on April 18, 2012, and yet, Sherrick Construction's bank account only had a balance of $257,200.47 on April 30, 2012. By the time HST requested information about payment on July 7, 2012, Sherrick Construction's bank account was further depleted. In response to this inquiry, HST was told that it needed to provide an invoice. This could only be described as a delay tactic because at that time, Sherrick Construction did not have the ability to pay HST what it was owed. Sherrick Construction received the final payment on the project, $34,309.17, on August 1, 2012. By the end of August 2012, the balance of Sherrick Construction's bank account was at $24,131.82. This was well before the unforseen sequester in December 2012. Accordingly, the Court finds that HST's claim is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

### D. 11 U.S.C. § 523(a)(6)

Pursuant to 11 U.S.C. § 523(a)(6), a debt is nondischargeable when the debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity." This discharge exception requires an injury resulting from conduct that is "both willful and malicious." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999). "[U]nless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* at 464 (internal citation omitted). It is insufficient that a reasonable debtor "should have known" that his conduct risked injury to others. *Id.* at 465 n.10. Instead, the debtor must "will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Id.* "The conduct 'must be more culpable than that which is in reckless disregard of creditors' economic interests and expectancies, as distinguished from . . . legal rights. . . . [K]nowledge that legal rights are being violated is insufficient to establish malice.'" *Steier v. Best (In re Best),* 109 F. App'x 1, 6 (6th Cir. 2004) (citation omitted). In other words, "[l]ack of excuse or justification for the debtor's actions will not alone make a debt nondischargeable under § 523(a)(6)." *S. Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo),* 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006) (citation omitted).

HST has not shown that the debtor maliciously intended to harm it. The proof showed that Sherrick Construction and the debtor failed to notify HST when payments were received

and that the debtor instituted stall tactics when HST inquired into whether payments had been received. The proof did not show that the debtor acted maliciously toward HST.

### E. 11 U.S.C. § 523(a)(14)

Finally, HST asserts that the debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(14). Section 523(a)(14) has two elements: "(1) the debt must be incurred to pay a tax owed to the United States; and (2) the tax owed to the United States must otherwise be nondischargeable under 11 U.S.C. § 523(a)(1)." ***Ramey v. Barton (In re Barton)***, 321 B.R. 869, 876 (Bankr. N.D. Ohio 2004). The Court finds that 11 U.S.C. § 523(a)(14) does not apply in this case. Even if there had been proof that the debt was incurred for the purpose of paying the debtor's personal income taxes and Sherrick Construction's payroll taxes, such taxes would have been dischargeable even if they had not been paid pre-petition.

Sections 523(a)(1)(A) and (B) apply to taxes for which returns were filed, or due, in the three years or two years, respectively, preceding the bankruptcy petition. The debtor filed for bankruptcy relief in 2016, making the appropriate look-back time lines ending in 2013 and 2014, and applying to the taxable years 2012 and 2013, respectively. HST points to tax payments made in 2012 for taxable years no later than 2011. The tax payments which HST identifies were made in 2012, for taxable years no later than 2011. Accordingly, even if HST had shown that the debtor incurred the debt to HST for the purpose of paying tax liabilities, it would still be dischargeable under 11 U.S.C. § 523(a)(14).

18 - U.S. Bankruptcy Court, M.D. Tenn.

## III. CONCLUSION

Accordingly, the Court finds that the debt owed to HST is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.